[Cite as *State v. Jenkins*, 2014-Ohio-3123.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :       Case No.   13CA3413

vs.                                      :

ERNEST L. JENKINS,                       :       DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.             :

---

APPEARANCES:

COUNSEL FOR APPELLANT:      Jess A. Atkins, Atkins & Atkins Attorneys at Law, LLC.,
                            600 South High Street, Suite 100, Columbus, Ohio 43215

COUNSEL FOR APPELLEE:       Sherri K. Rutherford, Chillicothe Law Director, and Carrie
                            L. Rowland, Chillicothe Assistant Law Director, 97 West
                            Main Street, Chillicothe, Ohio 45601

---

CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED: 7-10-14
ABELE, P.J.

{¶ 1}   This is an appeal from a Chillicothe Municipal Court judgment of conviction and

sentence.   The jury found Ernest L. Jenkins, defendant below and appellant herein, guilty of

operating a motor vehicle while under the influence of alcohol in violation of R.C.

4511.19(A)(1)(a).

{¶ 2}   Appellant raises the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

"APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE

ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE

I[,] SECTION 10 OF THE OHIO CONSTITUTION AND THE

SIXTH AND FOURTEENTH AMENDMENT[S] TO THE

UNITED STATES CONSTITUTION WHEN DEFENSE

COUNSEL FAILED TO CHALLENGE, EITHER FOR CAUSE

OR PEREMPTORILY, A BIASED JUROR."

SECOND ASSIGNMENT OF ERROR:

"APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE
I[,] SECTION 10 OF THE OHIO CONSTITUTION AND THE
SIXTH AND FOURTEENTH AMENDMENT[S] TO THE
UNITED STATES CONSTITUTION WHEN DEFENSE
COUNSEL INVITED TESTIMONY REGARDING THE
POSSIBILITY THAT APPELLANT WAS UNDER THE
INFLUENCE OF CONTROLLED SUBSTANCES."

THIRD ASSIGNMENT OF ERROR:

"THE APPELLANT'S CONVICTION FOR DRIVING WHILE

UNDER THE INFLUENCE WAS AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE."

**{¶ 3}** On July 24, 2013, Ron Hinton's horse trailer and appellant's vehicle collided. The accident investigator determined that appellant's vehicle had crossed the center line and hit Hinton's trailer. Ohio State Highway Patrol Trooper Rachel Efaw interviewed appellant after the accident and determined that appellant was under the influence of alcohol. Trooper Efaw thus issued citations to appellant for (1) operating a motor vehicle while under the influence in

violation of R.C. 4511.19(A)(1)(a), and (2) driving left of center in violation of R.C. 4511.25.

{¶ 4}  At trial, Ohio State Highway Patrol Trooper Bobby Brown testified that he responded to the accident involving Hinton's trailer.  He testified that the tire and gouge marks were located on Hinton's side of the road and he concluded that the impact occurred in Hinton's lane of travel.  Trooper Brown stated that his investigation led him to conclude that appellant drove left of center and side-swiped Hinton's trailer.

{¶ 5}  Trooper Efaw testified that when she first made contact with appellant, he was smoking a cigarette and wearing sunglasses.  She obtained his driver's license, registration, and insurance certificate and brought him to her patrol car.  Once in the patrol car, she noticed slurred speech, and "slow" demeanor and an odor of alcohol.  She asked appellant when he last consumed alcohol, and appellant informed her that it had been the weekend after July 4.  When she advised appellant that she smelled alcohol, appellant stated that he may have had a sip of a friend's beer.

{¶ 6}  Trooper Efaw decided to conduct some field sobriety tests to determine whether appellant was impaired.  The Horizontal Gaze Nystagmus (HGN) test revealed six out of six clues.  Trooper Efaw explained that she noticed (1) lack of smooth pursuit, i.e., involuntary jerking, in both of appellant's eyes, (2) appellant's eyes bounced when she asked him to hold them for a minimum of four seconds, (3) his eyes jerked during the onset nystagmus prior to 45 degree angle test, (4) his eyes were glassy and bloodshot, and (5) his pupils were constricted.

{¶ 7}  Trooper Efaw also administered the walk-and-turn test and  appellant exhibited six out of eight clues.  Trooper Efaw explained that appellant (1) was unable to hold the beginning position while she gave instructions and a demonstration, (2) raised his arms, (3)

stepped off the line, (4) stopped the test, (5) started over again, (6) lost his balance, and (7) took eight steps instead of nine.

{¶ 8}  Also, during the one-leg stand test, appellant swayed, raised his arms, and put his foot down twice.

{¶ 9}  After conducting the tests, Trooper Efaw concluded that appellant was under the influence of alcohol.   Efaw then took appellant to the patrol post and offered appellant a urine test.   Trooper Efaw twice explained the consequences of failing to take the test, but appellant refused to take the test.

{¶ 10}  On cross-examination, appellant's counsel asked Trooper Efaw why she chose to offer a urine test.   She stated that she asked for a urine test "so that we did not have to go to the hospital and then I also asked for the urine over the breath because I saw that his pupils were constricted and I wanted a further test."   The trooper explained that she requests a breath test if she "suspect[s] alcohol only."

{¶ 11}  Appellant testified that he had been visiting another individual who had been drinking beer from a clear mug and that he accidentally picked it up and took a large sip. Appellant explained that he thought he had picked up a glass containing Coke.   Appellant stated that he did not perform well on the HGN test due to the bright sun light, and that he had knee problems that affected his ability to perform the walk-and-turn and the one-leg stand tests.

{¶ 12}  After hearing the evidence, the jury found appellant guilty of operating a motor vehicle while under the influence.   Also, the trial court found appellant guilty of driving left-of-center.   This appeal followed.

I

## INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 13} In his first and second assignments of error, appellant argues that trial counsel did not provide effective assistance of counsel. In particular, appellant contends that trial counsel performed ineffectively by failing to challenge an allegedly biased juror and by inviting testimony that appellant possibly was under the influence of controlled substances.

A

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

{¶ 14} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Creech, 188 Ohio App.3d 513, 2010–Ohio–2553, 936 N.E.2d 79, ¶39 (4th Dist.).

{¶ 15} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Powell, 132 Ohio St.3d 233, 2012–Ohio–2577, 971 N.E.2d 865, ¶85. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." State v. Conway, 109 Ohio

St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶95 (citations omitted); accord State v. Wesson, 137 Ohio St.3d 309, 2013–Ohio–4575, 999 N.E.2d 557, ¶81.   "Failure to establish either element is fatal to the claim."   State v. Jones, 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶14.   Therefore, if one element is dispositive, a court need not analyze both.   State v. Madrigal, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶ 16} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   Strickland, 466 U.S. at 689.   Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."   Id.   "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner."   State v. Taylor, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶10, citing State v. Smith, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).   Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.   State v. Gondor, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶62; State v. Hamblin, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶ 17} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different.   State v. Short, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶113; State v. White, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.   Furthermore, courts may not simply assume the

existence of prejudice, but must require the defendant to affirmatively establish prejudice.   State v. Clark, 4th Dist. Pike No. 02CA684, 2003–Ohio–1707, ¶22; State v. Tucker, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002).

B

FAILURE TO CHALLENGE JUROR

{¶ 18} Appellant first asserts that trial counsel was ineffective for failing to excuse or further voir dire a juror who, appellant alleges, held a bias against individuals who drink alcohol.  Appellant alleges that the juror had a "disdain for alcohol and fear of law enforcement" that affected her ability to serve as an unbiased juror.   Appellant contends that if trial counsel had requested to excuse the juror, "[t]he empaneled jury would not have been tainted with a biased member and there is a reasonable probability that the jury would have rendered a not guilty verdict."

{¶ 19} Generally, jury selection falls within the realm of trial strategy and tactics.   State v. Mundt, 115 Ohio St.3d 22, 2007–Ohio–4836, 873 N.E.2d 828, ¶63; State v. Keith, 79 Ohio St.3d 514, 521, 684 N.E.2d 47 (1997).   Thus, reviewing courts should not second-guess trial counsel's voir dire strategy or "impose 'hindsight views about how current counsel might have voir dired the jury differently.'"   Mundt at ¶63, quoting State v. Mason, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998); accord State v. Mammone, — Ohio St.3d —, 2014-Ohio-1942, — N.E.2d —, ¶153.   Trial counsel, who observed the jurors firsthand, is in a much better position than a reviewing court to determine whether a prospective juror should be peremptorily challenged, State v. Trimble, 122 Ohio St.3d 297, 2009–Ohio–2961, 911 N.E.2d 242, ¶99, and "whether any potential juror should be questioned and to what extent."   State v. Murphy, 91

Ohio St.3d 516, 539, 747 N.E.2d 765 (2001).   As the Ohio Supreme Court explained in <u>Mundt</u>

at ¶¶64-65:

> "'Few decisions at trial are as subjective or prone to individual attorney
> strategy as juror voir dire, where decisions are often made on the basis of
> intangible factors.'   <u>Miller v. Francis</u> (C.A.6, 2001), 269 F.3d 609, 620.   'The
> selection of a jury is inevitably a call upon experience and intuition.   The trial
> lawyer must draw upon his own insights and empathetic abilities.   Written
> records give us only shadows for measuring the quality of such efforts. * * * [T]he
> selection process is more an art than a science, and more about people than about
> rules.'   <u>Romero v. Lynaugh</u> (C.A.5, 1989), 884 F.2d 871, 878.   For these
> reasons, we have recognized that 'counsel is in the best position to determine
> whether any potential juror should be questioned and to what extent.'   <u>Murphy</u>,
> 91 Ohio St.3d at 539, 747 N.E.2d 765; <u>see also</u> <u>Bradley</u>, 42 Ohio St.3d at 143, 538
> N.E.2d 373.
> In some cases, asking few or no questions of a prospective juror 'may be
> the best tactic for a number of reasons.   For example, questioning by other parties
> may convince counsel that the juror would be favorable for the defense, and that
> further questions might only antagonize the juror or give the prosecution a reason
> to use a peremptory challenge or even grounds for a challenge for cause.'   <u>People
> v. Freeman</u> (1994), 8 Cal.4th 450, 485, 34 Cal.Rptr.2d 558, 882 P.2d 249."

"'"Because the use of peremptory challenges is inherently subjective and intuitive, an appellate

record will rarely disclose reversible incompetence in this process."'"   <u>Id.</u> at ¶83, quoting

<u>Freeman</u>, 8 Cal.4th at 485, 34 Cal.Rptr.2d 558, 882 P.2d 249, quoting <u>People v. Montiel</u>, 5

Cal.4th 877, 911, 21 Cal.Rptr.2d 705, 855 P.2d 1277 (1993).

{¶ 20}  In the case at bar, we are unable to conclude that trial counsel performed

deficiently by failing to excuse or to further question the juror.   Trial counsel could have made a

strategic decision not to excuse the juror or not to ask further questions. Trial counsel was

entitled to consult his experience and intuition to determine whether to excuse or further question

the juror.   We find nothing objectively unreasonable with counsel's decisions.

{¶ 21}  Moreover, "[c]ounsel exercise discretionary judgment when they question jurors

and 'need not repeat questions about topics already covered by * * * opposing counsel, or the judge.'" State v. Coleman, 85 Ohio St.3d 129, 135, 707 N.E.2d 476 (1999), quoting State v. Watson, 61 Ohio St.3d 1, 13, 572 N.E.2d 97 (1991). In the case sub judice, trial counsel could have determined that the court and the prosecutor sufficiently questioned the prospective juror about her prior experiences. Additionally, the trial court had questioned the prospective juror regarding her impartiality. Thus, trial counsel did not need to repeat those same questions. Consequently, we are unable to conclude that trial counsel's failure to excuse the allegedly biased juror or to further question her constituted deficient performance.

{¶ 22} Even if we assume, arguendo, that counsel performed deficiently by failing to remove the juror or by failing to further question the juror, appellant is unable to demonstrate a reasonable probability exists that the result of the proceeding would have been different. Appellant can only speculate that the jury would have returned a not guilty verdict if trial counsel had excused the juror. As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. E.g., State v. Simmons, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶25; State v. Halley, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶25; State v. Leonard, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶68; accord State v. Powell, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim)

{¶ 23} Furthermore, to establish the prejudice element when a defendant alleges ineffective assistance of counsel due to trial counsel failing to excuse a biased juror, "the defendant 'must show that the juror was actually biased against him.'" Mundt at ¶67, quoting

Miller v. Francis, 269 F.3d at 616.   "So long as a juror indicates that he can be fair and impartial,

counsel is not ineffective in declining to exercise a peremptory challenge."   State v. Monford,

190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634 (10th Dist.), ¶94 (citations omitted);

accord Trimble at ¶99 (determining that defendant could not establish prejudice resulting from

trial counsel's failure to excuse jurors when jurors indicated that they could decide the case based

upon the facts presented at trial and could fairly and impartially decide the case).

> "Moreover, '[j]urors need not be totally ignorant of the facts and issues
> involved in the case. * * * "[I]t is beyond question that mere prior knowledge of
> the existence of the case, or familiarity with the issues involved, or even some
> preexisting opinion as to the merits, does not in and of itself raise a presumption
> of jury taint; such a standard would be certainly unsalutary, and likewise
> impossible to achieve."' Miller v. Francis, 269 F.3d at 616, quoting DeLisle v.
> Rivers (C.A.6, 1998), 161 F.3d 370, 382."

Mundt at ¶70.

{¶ 24}  In Monford, for example, the court concluded that the defendant, charged with

murder, was unable to show prejudice as a result of trial counsel's failure to excuse a juror who

had witnessed a close relative die of a gunshot wound.   The court observed that the prospective

juror initially stated, "I do have some knowledge so I wouldn't be able to serve as a juror."   Id. at

¶91.   The prospective juror later explained that he had witnessed a family member die from a

gunshot wound, which "would make it hard for him to hear the evidence and sit as a juror."   Id.

The prospective juror "agreed with the trial judge's assessment that his experience might make it

'distracting' for him to listen to the evidence."   Id.   The prospective juror further indicated,

however, "that he had no concerns about anything else that had been discussed that might affect

his ability to be fair and impartial."   Id.

{¶ 25}  When defense counsel questioned the prospective juror, the juror stated "that he

was comfortable with the concepts of the presumption of innocence and proof beyond a reasonable doubt. He also indicated that he had nothing to add to the topics that had previously been discussed with the other jurors." Id. at ¶92. The trial court then asked defense counsel if counsel wished to raise a challenge for cause. Id. at ¶93. Defense counsel replied that the defendant wanted to keep the prospective juror. Id.

{¶ 26} The court then questioned the prospective juror. During this questioning, the juror "clarified that he had not witnessed the actual shooting of his uncle, but that he was present when his uncle died as a result of a gunshot wound." Id. The juror also "assured the court that even if the testimony was distasteful or uncomfortable, he would be able to listen to and evaluate the evidence, be fair and impartial to both sides, and sign his name to a verdict form for either guilty or not guilty." Id. The juror further "assured defense counsel that he still would be able to think independently in this matter, despite his prior experience." Id.

{¶ 27} The appellate court thus determined that trial counsel did not perform ineffectively by failing to excuse the juror. Id. at ¶94. The court pointed out that the juror expressed that he could be fair and impartial. Id. at 94. The court further concluded that the defendant failed to show that the juror was actually biased against him. Id.

{¶ 28} In the case sub judice, appellant cannot show that the juror was actually biased against him. At most, the juror may have held some preconceived notions about other people whom she knew drank alcohol. However, none of her statements shows that she had an actual bias towards appellant. Furthermore, when the court questioned her regarding her prior experiences and whether she could decide the case based on the facts presented at trial, the juror responded: "If it was a domestic violence case then I would have a hard time being impartial.

Or if it was the problem that my son had I would have difficulty being impartial but with the drinking, that was a long time ago."[1]   The court then asked her if she believes she will have "a problem being impartial[.]"   The juror answered: "I don't think so."   Additionally, when defense counsel voir dired the prospective jurors, he asked whether any of them held "any strong feelings about people charged with DUI."   The juror appellant claims held a bias did not offer any response to this question.   Consequently, appellant is unable to show that a reasonable probability exists that the jury would have returned a not guilty verdict if trial counsel had excused or further questioned the juror.   Thus, he is unable to demonstrate that trial counsel rendered constitutionally ineffective assistance of counsel by failing to excuse or further question the juror.

{¶ 29}  Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

C

INVITED ERROR

{¶ 30}  In his second assignment of error, appellant contends that trial counsel performed ineffectively by inviting testimony that appellant may have been under the influence of controlled substances.   Appellant observes that trial counsel asked the trooper why she asked for a urine test, which led to the trooper's "testimony that [a]ppellant's pupils were allegedly constricted."   Trial counsel asked other questions that led the trooper to answer that she normally requests a breath test when she "suspect[s] alcohol only."   Appellant asserts:   "[T]he repeated questions

---

[1]   The record does not reveal the exact nature of this juror's prior experience with domestic violence, what happened to her son, and what she meant by "the drinking."

inviting repeated insinuations that drugs of abuse were suspected were not objectively

reasonable." Appellant claims that counsel's questions inviting this testimony prejudiced him,

because in the absence of these questions, the jury "would not have been tainted with a picture of

the Appellant as a drug abuser and the jury would have been at liberty to render a not guilty

verdict."

{¶ 31} Assuming, arguendo, that trial counsel's questioning that invited the testimony

suggesting that appellant may have been under the influence of a substance other than alcohol

constituted deficient performance, appellant cannot demonstrate a reasonable probability that the

result of the trial would have been different.[2] Instead, he can only speculate that the jury would

have returned a not guilty verdict if it had not heard testimony insinuating that appellant may

have been under the influence of a substance other than alcohol. As we previously stated,

speculation is insufficient to establish the prejudice component of an ineffective assistance of

---

[2] We further note that some courts refuse to recognize an ineffective assistance of counsel claim when the allegation is that trial counsel invited the alleged error. The Eighth District Court of Appeals explained the rationale as follows:

"[T]o allow such a claim, where counsel induced the error, would defeat the purpose of the invited error doctrine:

'[C]onsidering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error. There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error.'

State v. West, 8th Dist. Nos. 97391 and 97900, 2013−Ohio−96, ¶27, quoting Doss, 8th Dist. No. 84433, 2005−Ohio−775, ¶9. Regardless, invited error involves the exercise of trial strategy, and courts have consistently held that an appellate court 'will not question matters of trial strategy.' Id."
State v. Benitez, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶35.

In the case at bar, we do not deem it necessary to consider the merits of this rationale. Instead, we can dispose of appellant's ineffective assistance of counsel claim due to the lack of prejudice.

counsel claim.   Additionally, as we discuss under appellant's third assignment of error, the record contains ample competent, credible evidence to support appellant's conviction even in the absence of the testimony that he may have been under the influence of a substance other than alcohol.   Thus, we see no danger that the jury convicted appellant as a result of this testimony. Consequently, appellant cannot establish that trial counsel rendered constitutionally ineffective assistance of counsel.

{¶ 32}  Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## II

## WEIGHT OF THE EVIDENCE

{¶ 33}  In his third assignment of error, appellant contends that his conviction for driving while under the influence of alcohol is against the manifest weight of the evidence.   Appellant argues that Trooper Efaw's testimony that she noticed that appellant's eyes appeared constricted contradicted her earlier testimony that she did not notice anything abnormal about appellant when she first saw him.   He asserts that the more credible evidence suggests that appellant's eyes were constricted due to the bright sun.   Appellant further contends that Trooper Efaw was unable to state that appellant was swaying or moving in a drunken manner when she first saw him, but rather, could state only that he was "fumbling through his wallet."   Appellant additionally points out that Trooper Efaw did not notice an odor of alcohol emanating from appellant when she first approached him, but rather, noticed it within the confines of her patrol car.   Appellant also argues that Trooper Efaw's testimony that appellant was cooperative is inconsistent with someone who is under the influence of alcohol.   He suggests that his behavior

was consistent with a person who had "been in a collision with a multi-ton truck and horse trailer." Appellant contends that all of the foregoing evidence demonstrates that the jury clearly lost its way when it convicted him of driving while under the influence of alcohol.

{¶ 34} When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court """"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *."""" Eastley v. Volkman, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20 (clarifying that the same manifest-weight standard applies in civil and criminal cases), quoting Tewarson v. Simon, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court may find a trial court's decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); accord State v. Lindsey, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000). Moreover, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. Eastley at ¶21. As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

Id., quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984),

fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 35} Additionally, as this court previously explained in State v. Murphy, 4th Dist. No.

07CA2953, 2008–Ohio–1744, ¶31:

> "It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently."

{¶ 36} In the case at bar, we do not believe that the jury committed a manifest

miscarriage of justice. The state presented substantial credible and competent evidence to

establish that appellant had been under the influence of alcohol. Trooper Efaw testified that she

administered several field sobriety tests to appellant and that he exhibited multiple clues on each

one. She also stated that she smelled a moderate odor of alcohol emanating from appellant

when he entered her patrol car. She testified that in her experience, appellant's demeanor was

consistent with someone who was impaired.

{¶ 37} We recognize that appellant offered conflicting testimony and explanations for his

actions. However, the jury as the trier of fact was free to reject appellant's evidence and accept

the state's evidence. State v. Browning, 4th Dist. Highland No. 09CA36, 2010–Ohio–5417, ¶41

(stating that trier of fact may believe "all, some, or none" of a witness's testimony). Nothing in

the record leads us to conclude that the jury acted unreasonably by doing so. Consequently, we

do not believe that the jury lost its way and that appellant's conviction is against the manifest

weight of the evidence.

{¶ 38} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's

third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Jenkins*, 2014-Ohio-3123.]

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.