[Cite as *State v. Behrle*, 2021-Ohio-1386.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 20CA1110 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| STEPHEN J. BEHRLE, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, R. Jessica Manungo, Assistant State Public Defender, Columbus, Ohio, for Appellant.

C. David Kelley, Adams County Prosecutor, Kris D. Blanton, Assistant Prosecutor, West Union, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Stephen J. Behrle appeals his convictions of two felonious assault counts entered February 4, 2020, in the Adams County Common Pleas Court. On appeal, Mr. Behrle ("Appellant") asserts that his constitutional right to present a complete defense was violated when the trial court excluded vital admissible evidence; that he was denied the effective assistance of counsel; and that his sentence is contrary to law. For the reasons which follow, we find no merit to Appellant's first and second

assignments of error.  Accordingly, we overrule those assignments of error and affirm the judgment of the trial court.  However, the third assignment of error has merit.  Accordingly, the third assignment of error is sustained and the judgment of the trial court is reversed.  The portion of the judgment which indicates Appellant is to have no contact with the victim in this matter is vacated.  All other aspects of the order are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶2} We note that the Appellee, State of Ohio, has indicated its agreement with the statement of the case and facts as set forth in Appellant's brief.  Appellant's trial and convictions for two counts of felonious assault of Jesse Holley stemmed from circumstances which occurred on June 20, 2019, in Adams County.  The counts were merged for purposes of sentencing and Appellant was sentenced to a prison term of six (6) to nine (9) years.  Appellant was also ordered to have no contact with Mr. Holley.  The backdrop leading to Appellant's convictions is as follows.

{¶3} Appellant and Deborah Carey ("Carey") had an "unconventional" romantic relationship.  Appellant and Carey, once married, have known each other for over thirty years.  Together they have three adult children.  Appellant and Carey had become estranged romantically and had moved on to other long-term relationships.

{¶4} At the time of trial, Appellant had a girlfriend of seven years. Carey had a boyfriend of over four years, Jesse Holley ("Holley"). Carey and Holley spent time in Ohio and Florida. Carey had a farm in Adams County. Appellant had previously lived at Carey's farm with his children and Carey. According to Appellant, he still "checked on the farm" and on Carey's well-being.

{¶5} On June 20, 2019, knowing Carey was back from Florida, Appellant stopped by the farm. When he arrived, Carey and Holley were working in the barn. Appellant asked Carey about their eldest daughter, Sarah, and then left. According to Appellant, he was "shocked" to see Holley there because Carey had previously advised Appellant that Holley had become violent with her and had "beat the hell out of her."

{¶6} Appellant drove approximately three miles before deciding to go back to the farm and get money Carey owed him. When Appellant arrived the second time in his van, he motioned for Carey to come outside. Holley was in the house. When Appellant asked for the money allegedly owed him, Carey indicated she did not have it. Appellant, admittedly, starting yelling at Carey and used racially-offensive language. Upon hearing this, Holley came outside and approached Appellant with clenched fists.

{¶7} Appellant remained in his van. Appellant testified that due to the way he had parked the second time, he was unable to leave the driveway so he decided to take a jack handle under the seat and "stand his ground." Holley grabbed Appellant's shirt. Appellant struck Holley three times with the metal pipe, causing obvious injury. Carey called 911.

{¶8} Appellant left the farm. Police apprehended Appellant shortly thereafter and found the metal pipe with blood on it. Appellant was arrested.

{¶9} At Appellant's trial, Carey and Holley testified that Appellant was the aggressor. Appellant asked his attorney to present evidence of Holley's alleged prior violence towards Carey. According to Appellant, his counsel repeatedly complained to the trial court about Appellant's request. After Appellant was convicted, at sentencing the trial judge described Appellant as "controlling." As set forth above, Appellant was sentenced to a prison term and was ordered to have no contact with Mr. Holley.

{¶10} This timely appeal followed. Where pertinent, additional facts are set forth below.

## ASSIGNMENTS OF ERROR

I.   THE TRIAL COURT VIOLATED STEPHEN BEHRLE'S CONSTITUTIONAL RIGHT TO PRESENT A COMPLETE DEFENSE.

II.  STEPHEN BEHRLE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE

ASSISTANCE OF COUNSEL WHEN HE REPEATEDLY CRITICIZED MR. BEHRLE IN FRONT OF THE COURT DURING TRIAL FOR REASONS THAT IMPACTED HIS SENTENCE.

III.    THE TRIAL COURT SENTENCE WAS CONTRARY TO LAW BECAUSE THE TRIAL COURT WAS NOT AUTHORIZED TO IMPOSE BOTH A PRISON SANCTION AND A COMMUNITY CONTROL SANCTION FOR MR. BEHRLE'S FELONIOUS ASSAULT OFFENSE.

{¶11} We begin with Appellant's assertion that the trial court violated his constitutional right to present a complete defense.

A. STANDARD OF REVIEW

{¶12} "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky*, 106 S. Ct. 2142, 6 U.S. 683, 690 (1986), quoting *California v. Trombetta,* 104 S.Ct. 2528, 467 U.S. 479, 485 (1984).  *Accord State v. Clay,* 4th Dist. Lawrence No. 2013-Ohio-4649, at ¶ 32.  Although the right to present a defense is a fundamental element of due process of law, the right is not without limits.  *Washington v. Texas,* 87 S.Ct. 1920, 388 U.S. 14, 19-21(1967); *State v. Swann,* 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶ 13.  The right has only been applied to " 'testimony [that] would have been relevant and material, and * * * vital to the defense.' " *United States v. Valenzuela-Bernal*, 102 S.Ct. 3440, 458 U.S. 858, 867 (1982), quoting

*Washington,* 388 U.S. at 16. Moreover, the testimony or evidence must otherwise be admissible under the rules of evidence. *See Taylor v. Illinois,* 108 S.Ct. 646, 484 U.S. 400, 411 (1987); *accord State v. Schuler,* 4th Dist. Pickaway No. 02CA7, 2002-Ohio-6607, ¶ 16.

{¶13} Appellant's argument must be resolved in accordance with the evidentiary rules. " 'A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant.' " S*tate v. Steinhauer,* 4th Dist. Scioto No. 12CA3528, 2014-Ohio-1981*,* at ¶ 26, quoting *State v. Green*, 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). The term abuse of discretion means more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *See State v. Lester,* 4th Dist. Vinton No. 12CA689, ¶ 6, citing *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). " 'A review under the abuse of discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the

countervailing arguments.' " *Steinhauer, supra,* quoting *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

## B. LEGAL ANALYSIS

{¶14} Appellant argues that at trial, he was not allowed to introduce prior instances of Holley's conduct towards Carey. Appellant contended that said evidence would have provided necessary context to his claim of self-defense. Attorney Wallace explained his client's request at sidebar conference:

> [H]ere's our argument, evidence of prior instances of a victim's conduct is admissible for other purposes such as the defendant's reasonable belief that he's acting in self-defense. The defendant from what this guy would testify to is that his wife had told him on multiple occasions that Jesse Holley has beat the hell out of her and she had him arrested in Florida for beating the hell out of her. So, he knew that Jesse Holley was, had violent tendencies. We believe that should be admissible because of his reasonable belief that what happens next that he's acting in self-defense. * * * Mr. Behrle knew that as he came charging out the door, so in addition to seeing a bigger, younger man come at him, he knew it was bigger young man that had been violent in the past, and that goes to his reasonableness that he needed to use self-defense.

{¶15} Appellant argues that the trial court abused its discretion when it denied admission of the evidence on the basis of the hearsay exclusion because Holley's character for violence was pertinent to Appellant's self-defense theory. "Under Ohio law, a person is permitted to act in self-defense. R.C. 2901.05(B)(1). Self-defense is an affirmative defense." *See*

*State v. Jacinto,* 2020-Ohio-3722, 155 N.E. 3d 1056, at ¶ 43 (8th Dist.).

Under former R.C. 2901.05(A), the defendant had the burden of proving

self-defense by a preponderance of the evidence. *Jacinto, supra,* at ¶ 44.

{¶16} However, effective March 28, 2019, following revisions to

R.C. 2901.05, the statute now provides:

> A person is allowed to act in self-defense, defense of
> another, or defense of that person's residence. If, at the
> trial of a person who is accused of an offense that
> involved the person's use of force against another, there
> is evidence presented that tends to support that the
> accused person used the force in self-defense, defense of
> another, or defense of that person's residence, the
> prosecution must prove beyond a reasonable doubt that
> the accused person did not use the force in self-defense,
> defense of another, or defense of that person's residence,
> as the case may be.

*See State v. Ferrell,* 10th Dist. Franklin No. 19AP-816, 2020-Ohio-6879, at

¶ 26. Thus, the current version of R.C. 2901.05(B)(1) requires the state "to

disprove self-defense by proving beyond a reasonable doubt that [the

defendant] (1) was at fault in creating the situation giving rise to the affray,

OR (2) did not have a bona fide belief that he was in imminent danger of

death or great bodily harm for which the use of deadly force was his only

means of escape, OR (3) did violate a duty to retreat or avoid the danger."

*See Ferrell, supra*; *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-

Ohio-2691, at ¶ 31; *see also State v. Daley,* 10th Dist. No. 19AP-561, 2020-Ohio-4390, at ¶ 39.

{¶17} Generally, all relevant evidence is admissible. *State v. Clay,* 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, at ¶ 34. *See* Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio." Evid.R. 402. Additionally, relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶18} Evid.R. 404, which governs the admission of character evidence, provides:

> (A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions: * * *

> (B) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an

accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

{¶19} Evid.R. 405 governs methods of proving character and provides:

(A) Reputation or opinion

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.    On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(B) Specific instances of conduct

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.    Thus, Evid.R. 404(A) generally limits evidence of a person's character, or certain character traits, subject to certain exceptions.    Accordingly, Evid.R. 404(A)(2) permits evidence of "a pertinent trait of character of the victim * * * ."

{¶20} The critical issue is what the defendant knew about the alleged victim at the time of the confrontation. *Steinhauer, supra,* at ¶ 29; *State v. Busby,* 10th Dist. Franklin No. 98AP-1050, 1999 WL 710353, *5 (Sept. 14, 1999).  "[E]vidence of other acts must be temporally and circumstantially

connected to the facts of the offense alleged. *State v. Burson,* 38 Ohio St.2d 157, 311 N.E.2d 526 (1974)." *State v. Cooperider,* 3rd Dist. Marion No. 9-03-11, 2003-Ohio-5133, at ¶ 16. Before a trial court can admit these types of statements offered to show the defendant's state of mind, the court must balance the probative versus prejudicial effects the evidence will have on the jury per Evid.R. 403.

{¶21} In *Cooperider, supra,* the appellate court found that the victim's past violent acts occurring four years before the incident in issue in Cooperider's case were too distant in time and unrelated, and as such, they were properly excluded. In *State v. Ryan,* 2018-Ohio-2600, 115 N.E.3d 659 (11th Dist.), the appellate court found that the defendant's proffer lacked specificity, failed to detail the dates of the alleged prior violent acts, and failed to provide the number of prior violent acts. The *Ryan* court observed: "Absent a more detailed proffer, we are unable to determine whether these additional prior acts of violence by [the victim] were relevant in assessing appellant's state of mind and whether they were sufficient to support a finding that he had a bona fide belief that he was in imminent danger of death or serious bodily harm at the time of the shooting." *Id.*, at ¶ 106.

{¶22} Based upon our review of the above law and the trial

transcript, we find the trial court did not abuse its discretion in excluding evidence of Holley's alleged prior violent conduct towards Carey. First, other than Appellant's self-serving claim, the record does not reveal that Appellant actually knew of Holley's alleged prior violent conduct towards Carey *prior* to the June 20, 2019 incident at Carey's farm. Second, Appellant's claim that Carey had "told him on multiple occasions that Holley had beat the hell out of her and that she had him arrested in Florida," is somewhat vague and, without more, fails to demonstrate facts temporally and circumstantially related to the June 20, 2019 incident. Carey and Holley both testified they had been in a relationship together since 2015. If the proffered evidence was true, the record does not reflect if the alleged incidents occurred remotely in time or very close to the June 2019 incident. And, the alleged prior conduct of Holley's, as the prosecutor pointed out, was directed to Carey, not Appellant.

{¶23} Assuming arguendo that the trial court erred in excluding the evidence, we find such exclusion to be harmless. In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." An error is harmless where there is no reasonable probability that the error contributed to the outcome of the trial. *See State v. Thacker,* 4th Dist. Lawrence No. 18CA21, 2020-Ohio-

4620, at ¶ 95, citing, *State v. Brown,* 65 Ohio St.3d 483, 485, 1992-Ohio-61. Here, there is no reason to believe that even if the trial court erred in excluding the testimony of alleged prior violent conduct, that any error contributed to the outcome of the trial. As indicated above at paragraph ¶ 16, the State's burden was to disprove self-defense by proving beyond a reasonable doubt that Appellant was at fault in creating the situation which gave rise to the affray; or that Appellant did not have a bona fide belief that he was in imminent danger of death or great bodily harm which required the use of force; or that Appellant did violate a duty to retreat or avoid the danger. In this case, the State proved all three elements beyond a reasonable doubt. The State's evidence presented demonstrated Appellant created a hostile situation. The State's evidence suggested Appellant could not have reasonably believed he was in imminent danger of death or great bodily harm. And, the State proved Appellant failed to retreat or avoid Mr. Holley, who had no weapon.

{¶24} The jurors heard from all three witnesses to the events of June 20, 2019: Carey, Holley, and Appellant. Appellant testified that on the incident date, he went to his ex-wife's farm twice. On the first occasion, he saw Holley. Appellant testified he was "shocked" to see him there. Appellant left and went down the road when he decided to go back to collect

money that Carey owed him. When his wife told him, "No," Appellant told her: "[Y]ou could give me a heads up before you bring another effin N-word out here." Appellant admitted he used a racial slur.

{¶25} Appellant further testified that upon hearing the racially-charged statement, Holley "came through that screen like in [sic] shot out of a cannon." Holley's fists were clenched. Appellant testified that as Holley exited the house, he had "I'm going to kick your ass all over his face, all over his body language." Appellant admitted that if he had been in Holley's place, the racial slur would have upset him. As Holley came toward him, Appellant grabbed a jack handle behind the seat of his van. Appellant testified that Holley grabbed his shirt and Appellant subsequently struck him three times. Holley was struck on the back of his head, his forearm, and across his back.

{¶26} On cross-examination, Appellant admitted he was upset that Holley was at Carey's farm. Appellant testified when he arrived at the farm the second time, Holley had not been aggressive. He admitted that Holley never struck him, and Appellant did not see a weapon on Holley. Holley never even spoke to Appellant as he approached him.

{¶27} The trial court instructed the jury as to the tests for determining credibility. Here, the overwhelming evidence may be reasonably construed

to demonstrate that Appellant went to Carey's farm a second time, knowing that Holley was there. Appellant proceeded to berate his ex-wife, using a racial epithet in reference to her new boyfriend, possibly knowing Holley would overhear. While Appellant made much of the difference in age and size between Holley and himself, Appellant chose to return to the farm, park in such a way that he could not easily exit the area, insult his ex-wife and her boyfriend, and then instead of simply leaving, Appellant stayed and struck Mr. Holley three times with a heavy metal pipe. The evidence further indicates that if Appellant had legitimately needed to defend himself, one blow to Mr. Holley likely would have been sufficient. We, like the jury conclude that the State disproved Appellant's claim of self-defense.

{¶28} For the foregoing reasons, we find the trial court did not err by excluding the evidence of Mr. Holley's alleged prior violent conduct towards Ms. Carey. We find no merit to Appellant's first assignment of error. It is hereby overruled.

{¶29} Next, Appellant asserts that his trial counsel rendered constitutionally ineffective assistance. Appellant argues that during trial, his counsel repeatedly criticized Appellant in front of the court for attempting to control the litigation. Appellant concludes that the trial court later justified a significant sentence by referencing "controlling behavior."

## A. STANDARD OF REVIEW

{¶30} To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See State v. Short,* 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052; *State v. Williams,* 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, at 32; *State v. Gavin,* 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 42. The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *See State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

## B. LEGAL ANALYSIS

{¶31} In the trial transcript, Appellant has identified three occasions where his counsel approached the trial court to explain his client's request to elicit certain evidence, and his counsel expressed his disagreement and frustration to the trial court. Specifically, Appellant argues that the

"manner" in which trial counsel approached the court about these issues

invited the court to conclude that Appellant had a controlling personality.

Appellant concludes that trial counsel's damaging comments about

Appellant had a direct impact on his sentence length and thus, constituted

ineffective assistance.  For the reasons which follow, we disagree.

{¶32} Appellant first directs us to his counsel's cross-examination of

Deborah Carey.  During her testimony, Appellant's counsel asked to

approach the bench.  Upon doing so, counsel informed the court as follows:

> There are questions that my client wants to ask and I'm not
> trying to [inaudible] first.  I don't like people to throw things at
> me from across the room.  Um, he wants me to ask her how
> long she has been an alcoholic. * * * First question, which I
> alerted the court because, um, hopefully the court will take
> recognition of the fact that I do not make a habit of asking
> questions that I think are going to get shut down just so they're
> thrown out into the mist for the jury to hear and wonder about.
> * * * The first topic of conversation was a general inquiry into
> how long has the witness been an alcoholic. * * * The second
> question or area of questioning that my client wished to ask,
> and I wanted to put this on the record. * * * Mr. Behrle wanted
> me to ask his now-ex-wife, the current witness.  In 2015 what,
> if anything, did Mr. Behrle say when they met?  I wanted to put
> this on the record that I have no intention of asking that
> question because I try not to ask questions and I don't know
> what the answer is going to be.  And I fear, uh, contrary to my
> client's requests that it could be harmful to his defense, but I
> wanted to put that on the record, uh, just for record purposes
> that he wants me to ask that and I am not inclined.

{¶33} Appellant next points to the trial transcript where, during his own direct examination, the prosecutor objected and both counsel approached the bench after Appellant testified as follows:

> I pulled up when [sic] past the barn I seen her and Jesse. That was when I first realized Jesse was there or found out. I drove past the barns, circled around the area where you have to circle around, turned the van around, stopped in front of the barn. She came out of the barn. I asked her if she seen Sarah at the time [sic] that time I knew she was a little buzzed. I could smell the vodka.

{¶34} The prosecutor asserted Appellant's testimony about her being "buzzed" was prejudicial. Appellant's counsel responded that the testimony went to her credibility as to what she had previously testified to if she was under the influence. The trial court asked "Is this going to be a drumbeat?" Appellant's counsel responded: "Actually this was a drum solo from the witness that wasn't really what I asked. Um, so no, I didn't know it was coming." The trial court thereafter overruled the objection but cautioned against Appellant's testimony on the subject "going further." It appears that, if given leeway, Appellant was trying again to get in evidence of alcoholism or alcohol abuse. Appellant's counsel made a viable argument about credibility which the trial court overruled.

{¶35} Finally, Appellant points to the sidebar conference which Appellant's counsel requested early in Appellant's son's testimony.

Appellant's counsel explained he was going to attempt to ask the son the

exact same questions about the June 2019 incident.  Counsel explained:

> But his father would also like for me to ask him about prior
> incidents of his mother lying to the police on other events, such
> as when she was previously attacked. * * * That's, that became
> a plan very shortly ago. * * * My client brought this up to me as
> he was walking into the room. * * * Jesse Holley was arrested
> for assaulting the mother.  His testimony, the proposed
> testimony would be regarding the fact that the mother tried to
> lie and say the attack did not happen, but they arrested him he
> was present and saw it happen and called the police.

{¶36} The trial court ultimately concluded that the proposed evidence

would be hearsay.  Appellant's counsel explained his agreement,

commenting, "I understand, that's why I wanted to approach before I

asked."

{¶37} " ' "[I]n any case presenting an ineffectiveness claim, the

performance inquiry must be whether counsel's assistance was reasonable

considering all the circumstances." ' " *State v. Bradford,* 4th Dist. Adams

No. 20CA1109, 2020-Ohio-4563, at ¶ 19, quoting *Hinton v. Alabama,* 134

S. Ct. 1081, 571 U.S. 263, 273, quoting *Strickland,* 466 U.S. at 688.  Based

upon our review of the trial transcript, we find no merit to Appellant's

argument that his counsel performed deficiently by bringing Appellant's

improper and ill-advised requests to the court's attention.  Questioning

witnesses is manifestly within the realm of trial strategy, and " 'we will not

question counsel's strategic decision to engage, or not to engage, in a particular line of questioning as these decisions are presumed to be the product of sound trial strategy.' " *State v. Knauff,* 4th Dist. Adams No. 13CA976, 2014-Ohio-308 at ¶ 25, quoting *State v. Davis,* 12th Dist. Butler No. CA2012-12-258, ¶ 25.

{¶38} Here, Appellant's counsel properly chose not to present evidence regarding Carey's alleged history of alcoholism. " ' "It is improper for an attorney, under the pretext of putting a question to a witness, to put before the jury information that is not supported by the evidence." ' " *State v. Parham,* 2019-Ohio-358, 121 N.E.3d 412, (10th Dist.) at ¶ 61, quoting *State v. Davis,* 10th Dist. No. 01AP-579, 2002-Ohio-1920, ¶ 63, quoting *State v. Smidi,* 88 Ohio App.3d 177, 183, 623 N.E.2d 655 (6th Dist.1993). The record indicates there was no good faith basis for the question. Carey and Holley both testified that they had been drinking alcohol on the day of the incident. However, any question regarding Carey's alleged history of alcoholism would have been irrelevant and prejudicial. Asking the question would be placing information in the record not supported by evidence. Appellant's counsel behaved ethically in refusing to do so.

{¶39} Appellant's counsel also demonstrated reasonable trial strategy when he chose not to elicit testimony concerning what victim Holley

allegedly said to Appellant upon their first meeting in 2015, not knowing what the response would be and fearing it would be harmful to his client's defense. By approaching the court beforehand with regard to the evidence of prior incidents Appellant wished to elicit through his son's testimony, counsel avoided running afoul of the court's patience. In all instances complained of by Appellant, by approaching the trial court and indicating Appellant's wishes, his counsel also acted professionally and created a record on his client's behalf. We find no deficiency in Appellant's counsel's representation based upon the manner in which his counsel requested sidebar conferences and advised the court of his client's wishes.

{¶40} Furthermore, we are mindful that courts ordinarily may not simply presume the existence of prejudice but, instead, must require the defendant to affirmatively establish prejudice. *See State v. Clark,* 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker,* 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002); *see generally Roe v. Flores-Ortega,* 120 S. Ct. 1029, 528 U.S. 470, 483 (2008). As we have repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *See, e.g.*, *State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, at ¶ 34; *State v. Jenkins,* 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22. (Internal citations omitted.)

Appellant's argument that the trial court's commentary about his "controlling" personality was based upon the remarks made by his counsel at sidebar conferences is obvious speculation.

{¶41} We do not find the trial court's commentary and sentence to be a result counsel's alleged ineffectiveness but rather as a result of Appellant's own well-documented behavior. At sentencing, the trial court addressed Appellant's background, drug use, and prior criminal history as provided to the court in the pre-sentence investigation report. The trial court's comments about Appellant's controlling behavior referenced Appellant's behavior in the underlying trial court proceedings in Adams County. The court observed:

> Mr. Behrle from the very get go, you seem like you struck me as that nature that you're, you're a man that likes to control everything. And then it continued with, uh, tweaks in the bond supervision. You, I need this changed, I need this changed, I need this changed, and, um, and that's fine. I made those changes to facilitate your needs. The, um, and only until late last night yesterday I was provided your, your history. Uh, and I realize it's, it's from a time past, but, uh, it seems like you have spontaneous volatility. That it just, you know, heartbeat, you go from a very nice man, um, to, uh, violent man. And when I look at these records, which I'll discuss further, um, you've attacked other people with metal in the past and so, you see this pattern that returns even after a period of time * * *.

{¶42} Later during sentencing, the court summarized Appellant's behavior during the underlying pretrial proceedings as follows:

Um, they couldn't get him to submit the home plans and really a disaster trying to, uh, ever, ever monitor or supervise the defendant, therefore certainly causes the court great concern as to any consideration of community control in this case. The, uh, the court did set [sic] front and center on this case and, and uh, got to hear the evidence and, uh, again, the only way I can really describe it is, um, a person, a personality at least that has to control everything, um, and becomes very volatile and, and um, and dangerous, uh, when everybody doesn't subject to your whims and wishes, uh, even as you depart the courtroom after the trial, demanding that you be sent to prison immediately, you weren't going to stay here anymore.

{¶43} Finally, the overwhelming evidence presented at trial very strongly suggests Appellant may be fairly characterized as having a controlling personality. Deborah Carey testified on direct examination that she had known Appellant since she was 18 years old. The parties had over a 30-year relationship. Despite having not lived together for years, Appellant regularly stopped by Carey's farm to "check on" the farm and her. Carey testified that on June 20, 2019, she had not invited Appellant to her farm and at no time prior to June 20th was there an agreement between Appellant and her that he could come anytime he wanted. It is undisputed that he came to the farm twice, uninvited, on the incident date. What Appellant characterizes as "checking" on Carey may very well be construed as stalking, controlling behavior.

{¶44} The evidence also demonstrates that when Appellant first came to the farm on June 20th, he saw Holley present there and was "shocked" to

see him.  Appellant left but had only driven approximately three miles when he decided to go back and ask Carey for money allegedly owed him.  When Carey declined to pay him, he began to verbally berate her and insult her companion with a racial epithet.  Instead of leaving or apologizing when Holley approached him, Appellant struck him with a metal pipe not once, but three times, causing severe injury.  Given the nature and length of Appellant's relationship with Carey, the facts presented at trial may be reasonably construed as evidence that on June 20, 2019, Appellant behaved as a jealous and controlling former domestic partner.

{¶45} For the foregoing reasons, we find no merit to Appellant's second assignment of error.  Indeed, the record supports a conclusion that Appellant's counsel was highly qualified, professional, and effective.  Accordingly, the second assignment of error is hereby overruled.

{¶46} Finally, Appellant asserts that his sentence is contrary to law because the court imposed both a prison term and a no contact order.  Appellant argues that this is plain error.  Based on the authority of *State v. Anderson,* 2015-Ohio-2089, we agree.

A. STANDARD OF REVIEW

{¶47} When reviewing felony sentences appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2).  *State v. Shankland,*

4th Dist. Washington Nos. 18CA11, 18CA12, 2019-Ohio-404, at 18; *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 22-23. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶48} The defendant bears the burden of establishing by clear and convincing evidence that the sentence is either contrary to law or not supported by the record. *Shankland, supra,* at ¶ 20. *See*, e.g., *State v. Fisher*, 4th Dist. Jackson No. 17CA5, 2018-Ohio-2718, ¶ 20, citing *State v. O'Neill,* 3d Dist. Allen No. 1-09-27, 2009-Ohio-6156, fn. 1.

## B. LEGAL ANALYSIS

{¶49} The Supreme Court of Ohio has addressed the issue Appellant raises in *State v. Anderson,* 143 Ohio St.3d 173, 2015-Ohio-2089, Anderson was convicted of two first-degree felonies: rape and kidnapping.

The trial court imposed prison terms for both offenses. The court also imposed a no-contact order. In its opinion, the Supreme Court reasoned that the General Assembly intended prison and community-control sanctions as alternative sentences for a felony offense. Therefore, the Court held that as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions. Consequently, because a court cannot impose a prison term and a community-control sanction for the same offense, and no exception allows otherwise, the Supreme Court held that the trial court erred in imposing the no-contact order. The *Anderson* court reversed the judgment of the court of appeals and vacated the no-contact order.

{¶50} More recently, the 11th District Court of Appeals, based upon the authority of *Anderson,* found that it was plain error for the trial court to impose a no-contact order as part of an appellant's sentence. *State v. Gray,* 11th Dist. Lake No. L-2017-L-152, 2018-Ohio-3326. Gray entered a guilty plea to four various felonies. As part of Gray's sentence, in addition to imposing a prison term for each offense, the trial court ordered Gray to have no contact with the victim of the felonies. While Gray did not raise the issue, the appellate court explicitly found the no-contact order was not

authorized by law as explained in *Anderson*. The *Gray* court found that the trial court erred in imposing the no-contact order and, accordingly, reversed the judgment of the court of appeals and vacated the no-contact order.

{¶51} Based upon the foregoing, we find merit to Appellant's argument and the third assignment of error is sustained. Thus, we reverse the judgment of the trial court and vacate the no-contact order.

{¶52} Having found no merit to Appellant's first two assignments of error, the judgment of the trial court is affirmed as to Appellant's conviction and prison sentence. However, Appellant's third assignment of error is sustained and the portion of the judgment of the trial court issuing a no-contact order is hereby reversed and vacated.

**JUDGMENT AFFIRMED IN PART**

**AND REVERSED IN PART.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**