[Cite as *State v. Ellis*, 2023-Ohio-4692.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 23AP0005 |
| | : | |
| ROY ELLIS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Morgan County Court,
                                                             Case No. 22-CRB-107

JUDGMENT:                                        AFFIRMED

DATE OF JUDGMENT ENTRY:          December 21, 2023

APPEARANCES:

For Plaintiff-Appellee:                          For Defendant-Appellant:

MARK J. HOWDYSHELL                      RICHARD D. HIXSON
MORGAN COUNTY PROSECUTOR      3808 James Court, Suite 2
19 E. Main St.                                       Zanesville, OH 43701
McConnelsville, OH 43756

*Delaney, J.*

{¶1} Defendant-Appellant Roy Ellis appeals his February 13, 2023 conviction and sentence by the Morgan County Court. Plaintiff-Appellee is the State of Ohio, but it did not file an appellee's brief.

## FACTS AND PROCEDURAL HISTORY

### Arrest

{¶2} On August 19, 2022, Defendant-Appellant Roy Ellis was arrested on a charge of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A)(1). Ellis was accused of striking and causing injuries to his 16-year-old stepdaughter, O.M. Ellis entered a plea of not guilty to the charge and was appointed counsel.

### Pre-Trial Proceedings

{¶3} Counsel for Ellis filed a Suggestion of Incompetence on August 24, 2022. Counsel was concerned that due to Ellis's mental state, he was incapable of understanding the nature and objective of the proceedings against him or assisting in his defense. On September 12, 2022, the trial court ordered Ellis to undergo an evaluation of his mental condition pursuant to R.C. 2945.371(A). Via judgment entry filed January 9, 2023, it appears the parties stipulated to the forensic report and a jury trial would proceed.[1]

{¶4} The matter was scheduled for a jury trial to start on January 24, 2023. Ellis filed a motion to continue the jury trial for the State to provide supplemental discovery on

---

[1] The January 9, 2023 judgment entry is handwritten. The handwriting is challenging to read.

the issue of corporal punishment and/or self-defense. The jury trial was continued to February 13, 2023.

{¶5} On January 30, 2023, Ellis filed a notice of self-defense pursuant to Crim.R 12.2. He stated that he intended to proceed on evidence contained within the discovery response provided by the State on August 22, 2022, and not prior instances or occurrences of bad behavior. He requested the trial court include the affirmative defense of self-defense in the jury instructions. Ellis also filed a disclosure of supplemental discovery where Ellis listed three Behavioral Detail Reports concerning O.M., the alleged victim.

{¶6} On February 1, 2023, the State filed a Motion in Limine requesting the trial court exclude the three Behavioral Detail Reports concerning O.M. The Behavioral Detail Reports from December 10, 2018, November 12, 2020, and May 13, 2021 were reports regarding O.M.'s behavior at school. The State contended the Behavioral Detail Reports were not relevant pursuant to Evid.R. 401 or in the alternative, should be excluded under Evid.R. 403(A). The State argued Ellis provided it with the reports on January 27, 2023, 17 days before trial, while the State made its discovery request on August 22, 2022. Further, the alleged bad acts of the victim were being used to bolster Ellis's self-defense claims but the documents regarding O.M.'s behavior at school did not show how Ellis would believe he was in imminent danger of great bodily harm.

{¶7} Ellis responded to the motion in limine. He first argued the delay in disclosing the supplemental discovery was due to Ellis being prohibited from entering his home where the records were located. Counsel further alleged the State engaged in similar delayed discovery in a different, unrelated criminal case.

**Jury Trial**

{¶8} The jury trial went forward on February 13, 2023. During voir dire, the following occurred:

MS. SPENCER [defense trial counsel]: No? Okay. All right. So I want to talk to you guys – I want to talk to you guys about the presumption of innocence. So as Mr. Ellis is sitting here right now, he is not guilty. It's innocence until proven guilty. So is there anyone here right now – and I know it's a little awkward because he's dressed in orange and he's cuffed. Is there anyone here right now that does not agree with me that he is innocent sitting here right now?

(NO AUDIBLE RESPONSES.)

(T. 23). After the jury was selected, the trial court took a fifteen-minute recess. (T. 48). It went off the record. When it went back on the record, the jury was seated, and the parties commenced with their opening arguments. (T. 49).

{¶9} The first witness to testify was Deputy Bryan Johnson with the Morgan County Sheriff's Office. He had been in law enforcement since 2006 and with the Morgan County Sheriff's Office since April 2022. He was dispatched to an apartment located at North State Route 376 in McConnelsville, Ohio based on a call from V.D. who resided in a neighboring apartment. When he arrived, Deputy Johnson made contact with Ellis who came out of the apartment claiming he had medical issues. The State asked Deputy Johnson to identify the man who came out of the apartment:

Q. Okay. And just so we're clear, did you identify who the man was at the scene when you arrived?

A. Yes. It was this gentleman here.

Q. Okay. And do you – did you identify him as Roy Ellis?

A. I did.

(T. 57).

{¶10} Deputy Johnson called EMS to assess Ellis. Ellis had a laceration over his left eye, circular laceration on the left side of his mouth, a scratch on the bottom of his mouth, scratch on his left arm, and a small laceration on the right hand near his last knuckle. When Deputy Johnson first arrived on the scene, Ellis was upset and claimed he was stabbed in the face. Ellis then stated he was stabbed with a knife. Deputy Johnson looked for a knife but did not find one on the scene. After examining Ellis, EMS advised Deputy Johnson that Ellis's injuries were due to fingernails and scratching versus a bladed instrument. Deputy Johnson took photographs of Ellis's injuries, which were presented to the jury and admitted into evidence. Deputy Johnson testified that with his training and knowledge, he believed that Ellis's injuries were not defensive wounds, but self-defensive wounds caused by the victim.

{¶11} Deputy Johnson then went into the apartment to speak with O.M. He observed that O.M. had a bruising and swelling around her left eye, scratches around her neck, minor scratches on her arms and legs, and her hands were a little bit red. Photographs of O.M.'s injuries were taken, presented to the jury, and admitted into evidence. It was apparent to Deputy Johnson that the incident between O.M. and Ellis took place in the kitchen and living room. He took a photograph of the kitchen table, where there were objects on the table and the chairs around the table were standing upright.

{¶12} O.M. told Deputy Johnson that Ellis caused her injuries when Ellis attacked her from behind. He shoved her into the TV in the living room, which Deputy Johnson

found destroyed and laying on the floor. He took a photograph of the TV, which was presented to the jury and admitted into evidence. O.M. appeared to Deputy Johnson to be distraught and scared. She told Deputy Johnson that she thought Ellis was trying to kill her.

{¶13} Ellis told Deputy Johnson that O.M. attacked him by jumping off the table and assaulting him after words were exchanged. He told Deputy Johnson that he put up his hands to defend himself from O.M. He denied hitting O.M.

{¶14} At the time of the incident, O.M. was 16 years old, 6 foot 2 inches tall, and weighed approximately 200 pounds. Ellis was 44 years old, 6 foot 4 inches tall, and weighed approximately 240 pounds.

{¶15} Based on the scene and the parties' statements, Deputy Johnson determined Ellis was the aggressor and placed him under arrest for domestic violence.

{¶16} Ellis's neighbor, V.D., testified next. She identified Ellis by pointing to where he was sitting but did not provide a description of what Ellis was wearing. (T. 81).

{¶17} V.D. testified that she lived in the apartment directly next door to the apartment where Ellis resided with his wife (O.M.'s mother) and O.M. On August 18, 2022, V.D. heard a slam come from Ellis's side of the apartment. Then she heard O.M. screaming, "get off me, quit hitting me, quit hitting me." (T. 82). "I heard Roy calling her all sorts of names, saying that he was going to beat her ass and all sorts of threats. And then it sounded like somebody either fell down the steps or got thrown down the steps." (T. 82-83). V.D. called the police and waited outside for them to arrive.

{¶18} O.M. then testified. O.M. said on August 18, 2022, she heard Ellis speak to her mother on the phone and she thought she heard Ellis call her mother, "bitch." O.M.

got mad, which led to a verbal argument between her and Ellis. O.M. was sitting on the couch at the time of the verbal argument. After the verbal argument, O.M. said that she flew into the TV and then Ellis attacked her in the living room. She told Ellis to stop. He hit her multiple times in the face with his closed fist. He put his hands on the top of her head, which felt like he was going to break her neck because it was being pressed downwards. She tried to claw him off her multiple times, including scratching his face. She was checked out by EMS and did not have any follow-up medical treatment.

{¶19} During her cross examination, counsel asked if O.M. had ever been in fights before. O.M. answered, yes. (T. 101). Counsel next asked whether she had gotten in fights at school, which caused the State to object. (T. 101). The trial court called a recess and discussed the objection with the parties. The State argued the question of whether O.M. had been in fights before was not relevant to Ellis's state of mind at the time the offense happened. It maintained the evidence held no relevance to Ellis's belief that he was in imminent danger of bodily harm because O.M. had been in prior fights at school. The trial court sustained the objection. (T. 103). Counsel for Ellis did not proffer the Behavioral Detail Reports on the record. Counsel for Ellis proceeded with O.M.'s cross examination, asking:

Q. [O.M.], the last – last statement you testified to is that you've been in fights before. Correct?

A. Um-huh.

Q. Okay. And why were you in fights before?

A. Be more specific.

THE COURT: Well, you have a question there. Maybe you don't know. Why were you in a fight before? If you can answer that.

A. Over petty stuff.

Q. Okay. So can you give me an example?

A. Well, it's mostly the neighbors but that's it.

Q. Which –

A. It's mostly just verbal arguments. Nothing really serious.

Q. Have you been in a physical fight before?

A. Just one.

Q. Just one?

A. Yeah.

Q. What kind of fight was it?

A. What do you mean?

Q. What happened during the fight?

A. I don't really remember.

Q. So you were in a physical fight with somebody that you – that you don't remember?

A. No, because it happened like my freshman year of high school.

THE COURT: Okay. You're stuck with that answer.

(T. 103-105).

{¶20} The State rested after O.M.'s testimony and the defense also rested. The parties moved to closing arguments after which the trial court instructed the jury. The trial court included a self-defense instruction.

{¶21} The jury returned its verdict where it found Ellis guilty of domestic violence in violation of R.C. 2919.25(A).

### Sentencing

{¶22} The trial court moved directly to sentencing, where it imposed a sentence of 180 days in jail with 104 days suspended and 76 days credit for jail time served. The trial court ordered one year of probation and a no-contact order. The sentencing entry was journalized on February 13, 2023.

### Motion for New Trial

{¶23} On February 14, 2023, Ellis filed a Motion for New Trial. In his motion, he stated that, "[d]uring the jury trial Defendant was clothed in jail clothing and remained shackled in the presence of the jury." Ellis believed this was a violation of his due process rights and cited supporting case law. His motion for new trial did not specify if the trial court required Ellis to wear jail clothing, if Ellis wore jail clothing for the entirety of the trial, if the trial court required Ellis to be shackled, or if Ellis was shackled for the entirety of the jury trial.

### Intervening Notice of Appeal

{¶24} On February 22, 2023, Ellis filed a Notice of Appeal of the February 13, 2023 sentencing entry.

{¶25} When Ellis filed his notice of appeal, neither Ellis nor the State filed a notice with this Court that a motion for new trial pursuant to Crim.R. 33 was pending before the trial court.

**Trial Court Proceeds on the Motion for New Trial**

{¶26} The trial court docket states it set a hearing on Ellis's Motion for New Trial on March 8, 2023 at 1:00 p.m. Ellis did not submit a transcript of the hearing with the appellate record.

{¶27} On March 10, 2023, the State filed a memorandum contra to the motion for new trial. The State first argued that in order to prevail on a motion for a new trial for his clothing, Ellis must show he was compelled to stand before a jury dressed in identifiable jail clothing and was prejudiced by the compulsion. It stated,

> Here, Mr. Ellis had ample time and opportunity to secure civilian clothing for his trial. Despite the face [sic] Mr. Ellis was incarcerated, he could have made arrangements with a family member or a friend to bring him clothing. Mr. Ellis had over a month to secure clothing for his trial.

(Memorandum Contra Defendant's Motion for New Trial, March 10, 2023). As to the whether Ellis was shackled during the trial, the State said, "Here, Mr. Ellis was not shackled during the course of his trial. If the jury inadvertently observed Mr. Ellis in the hallway in handcuffs, then the burden shifts to Defendant to demonstrate actual prejudice." (Memorandum Contra Defendant's Motion for New Trial, March 10, 2023).

{¶28} On March 13, 2023, the trial court denied the motion for new trial. Ellis did not separately appeal the March 13, 2023 judgment entry.

**ASSIGNMENTS OF ERROR**

{¶29} Ellis raises three Assignments of Error:

I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION FOR NEW TRIAL, AS HIS

PRESENCE IN JAIL CLOTHES AND SHACKLES DURING THE JURY TRIAL WAS A PREJUDICIAL VIOLATION OF HIS DUE PROCESS RIGHTS.

II. THE TRIAL COURT PREJUDICIALLY ERRED WHEN SUSTAINING APPELLEE'S OBJECTION REGARDING THE VICTIM'S PRIOR VIOLENT BEHAVIOR, AS SUCH EVIDENCE IS RELEVANT AND ADMISSIBLE.

III. THE JURY'S FINDING THAT DEFENDANT/APPELLANT DID NOT ACT IN SELF-DEFENSE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ANALYSIS**

**I.**

{¶30} Ellis contends in his first Assignment of Error that the trial court erred when it denied his motion for new trial. Based on the procedural history of this case, we find we are without jurisdiction to consider the trial court's March 13, 2023 judgment entry.

{¶31} It is well-settled that when an appeal is taken from a trial court's judgment, the trial court is divested of jurisdiction, except to act in aid of that appeal. *State v. Yeager*, 11th Dist. Lake No. 2022-L-048, 2023-Ohio-2730, ¶ 7 citing *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1979). Once "a case has been appealed, the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *Id.* quoting *State ex rel. Newton v. Court of Claims*, 73 Ohio St.3d 553, 558, 653 N.E.2d 366 (1995) citing *Yee v. Erie Cty. Sheriff's Dept.*, 51 Ohio St.3d 43, 44, 553

N.E.2d 1354, 1355 (1990). A motion for a new trial is inconsistent with a notice of appeal of the judgment sought to be retried. *State v. Shuster*, 5th Dist. Morgan No. 13AP0001, 2014-Ohio-3486, 2014 WL 3936283, ¶¶ 57-58 citing *Powell v. Turner*, 16 Ohio App.3d 404, 405, 476 N.E.2d 368 (11th Dist.1984), citing *Majnaric v. Majnaric*, 46 Ohio App.2d 157, 347 N.E.2d 552 (9th Dist.1975), paragraph one of the syllabus. Therefore, a defendant's filing of a notice of appeal divests the trial court of jurisdiction to consider a motion for a new trial. *State v. Kenney*, 8th Dist. Cuyahoga No. 81752, 2003–Ohio–2046, ¶ 58, appeal not allowed, 99 Ohio St.3d 1546, 2003–Ohio–4671, 795 N.E.2d 684. "The basis for this conclusion is patent; namely, after a defendant has filed a notice of appeal from a criminal conviction, the possibility that the defendant's motion might be granted would fundamentally interfere with the appellate court's jurisdiction to reverse, modify, or affirm the appealed conviction." *State v. Yeager*, 2023-Ohio-2730, ¶ 8.

{¶32} Under the Ohio Rules of Appellate Procedure, there are procedures to address the jurisdictional issues of a timely filed post-judgment motion for new trial and a notice of appeal. App.R. 4(B)(3) speaks directly to the time for appealing a decision on a timely filed post-judgment motion for a new trial in a criminal case. *State v. Struckman*, 1st Dist. Hamilton No. C-200069, 2021-Ohio-1043, ¶ 9. Under App.R. 4(B)(3), when a criminal defendant moves for a new trial for a reason other than newly discovered evidence pursuant to Crim.R. 33(A), and that motion is filed within the time provided under Crim.R. 33(B) for filing a motion for a new trial on grounds other than newly discovered evidence, the time for appealing the judgment of conviction is tolled until the motion for new trial motion is decided. The decision of the motion for new trial is then reviewable in the direct appeal. *Id*. However, if the criminal defendant files notice of appeal from an

otherwise final judgment but *before* the trial court has resolved the pending motion for new trial for a reason other than newly discovered evidence, "then the court of appeals, *upon suggestion of any of the parties*, shall remand the matter to the trial court to resolve the motion in question and shall stay appellate proceedings until the trial court has done so." (Emphasis added.) After the trial court has ruled on the post-judgment filings on remand, the criminal defendant may move to amend their previously filed notice of appeal or file a new notice of appeal, which would be consolidated with the original appeal. App.R. 4(B)(3).

{¶33} The trial court entered Ellis's conviction and sentence on February 13, 2023. On February 14, 2023, Ellis filed his motion for new trial based on an alleged violation of Crim.R. 33(A)(1). Crim.R. 33(A)(1) states:

(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; * * *

{¶34} On February 22, 2023, Ellis filed his notice of appeal of his conviction and sentence. Our review of the trial court and appellate records shows Ellis did not file a suggestion with this Court that the motion for new trial remained pending with the trial court and this Court should remand the matter to the trial court to resolve the motion in question. The trial court denied Ellis's motion for new trial on March 13, 2023. In his first Assignment of Error, Ellis argues the trial court erred in denying his motion for new trial.

Based on this procedural history, the application of the Rules of Appellate Procedure, and Ellis's argument on appeal, we are without jurisdiction to review the March 13, 2023 judgment entry.

{¶35} The trial court's March 13, 2023 ruling on the motion for new trial is void for lack of jurisdiction. Ellis's first Assignment of Error is dismissed.

**II.**

{¶36} In his second Assignment of Error, Ellis contends the trial court abused its discretion when it sustained the State's objection to evidence of O.M.'s prior alleged violent behavior. We disagree.

{¶37} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 5th Dist., 2021-Ohio-501, 168 N.E.3d 86, ¶ 49 citing *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶38} In his appellate brief, Ellis states it is uncontroverted that he knowingly caused physical harm to a family or household member; however, he claimed he acted in self-defense. Under Ohio law, a person is permitted to act in self-defense, and self-defense is an affirmative defense. R.C. 2901.05(B)(1). To establish self-defense in the use of non-deadly force, the accused must show that: (1) he was not at fault in creating

the situation giving rise the altercation and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause the death or great bodily harm. *State v. Staats*, 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325, 2021 WL 1502535, ¶ 25 citing *State v. Galloway*, 2016-Ohio-7767, 74 N.E.3d 754, ¶ 26 (5th Dist.), citing *State v. Batrez*, 5th Dist. Richland No. 2007-CA-75, 2008-Ohio-3117, 2008 WL 2587610.

{¶39} Thus, if evidence is presented at trial that tends to support that a defendant used nondeadly force in self-defense, the State must prove beyond a reasonable doubt that the defendant did not use that force in self-defense. *Staats, supra* at ¶ 28 citing *State v. Jacinto*, 8th Dist. No. 108944, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46. In other words, the State must disprove at least one of the elements of the use of nondeadly force in self-defense beyond a reasonable doubt, i.e., the State must prove that (1) the defendant was at fault in creating the situation giving rise to the affray in which the force was used or (2) the defendant did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm or (3) the defendant used more force than was reasonably necessary to defend against the imminent danger of bodily harm. *Id.*, citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31; *State v. Nestingen*, 5th Dist. Richland No. 2019 CA 110, 2020-Ohio-2965, ¶ 17.

{¶40} In general, all relevant evidence is admissible. *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, 2021 WL 1550501, ¶ 17 citing *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, at ¶ 34. *See* Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio." Evid.R. 402. Additionally, relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶41} Evid.R. 404, which governs the admission of character evidence, provides:

(A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions: * * *

(B) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.

{¶42} Evid.R. 405 governs methods of proving character and provides:

(A) Reputation or opinion

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by

testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(B) Specific instances of conduct

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct. Thus, Evid.R. 404(A) generally limits evidence of a person's character, or certain character traits, subject to certain exceptions. Accordingly, Evid.R. 404(A)(2) permits evidence of "a pertinent trait of character of the victim * * *."

{¶43} In this case, Ellis contends the trial court erred in excluding evidence of the three Behavioral Detail Reports concerning O.M. He states that evidence was relevant to the issue of whether he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause the death or great bodily harm. The issue is what Ellis knew about O.M. at the time of the incident. *State v. Behrle*, 2021-Ohio-1386, ¶ 20 citing *State v. Steinhauer*, 4th Dist. Scioto No. 12CA3528, 2014-Ohio-1981, ¶ 29; *State v. Busby*, 10th Dist. Franklin No. 98AP-1050, 1999 WL 710353, *5 (Sept. 14, 1999). "[E]vidence of other acts must be temporally and circumstantially connected to the facts of the offense alleged. *State v. Burson*, 38 Ohio St.2d 157, 311 N.E.2d 526 (1974)." *Behrle, supra* at ¶ 29 quoting *State v. Cooperider*, 3rd Dist. Marion No. 9-03-11, 2003-Ohio-5133, ¶ 16. Before a trial court can admit these types of statements offered to show the defendant's state of mind, the trial court must balance

the probative versus prejudicial effects the evidence will have on the jury under Evid.R. 403.

{¶44} In *State v. Behrle,* 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, 2021 WL 1550501, the Fourth District Court of Appeals composed a well-examined analysis of the evidentiary issue raised by Ellis under a similar factual scenario. In *Behrle*, the appellant and former wife had known each other for over 30 years and remained in contact. The former wife had a boyfriend of over four years. In June 2019, the appellant stopped by the former wife's farm where the former wife and her boyfriend were working in the barn. The appellant was shocked to see her boyfriend because the former wife had previously advised the appellant that her boyfriend had become violent with her and had "beat the hell out of her." *Id.* at ¶ 3-5. The appellant left the farm but decided to return to the farm. The appellant confronted the former wife about money she allegedly owed him, yelling and using racially offensive language. Her boyfriend came outside and approached the appellant with clenched fists. The appellant was inside his vehicle and because of the way he had parked, he was unable to leave. He chose to take a jack handle under the seat and "stand his ground." The boyfriend grabbed the appellant's shirt. The appellant struck the boyfriend three times with the metal pipe, causing obvious injury. *Id.* at ¶ 6-7.

{¶45} The appellant was charged with felonious assault. At trial, the appellant claimed self-defense. The appellant attempted to present evidence of the boyfriend's alleged prior violence towards the former wife to demonstrate he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of

force not likely to cause the death or great bodily harm. When the trial court denied the admission of the evidence, the appellant proffered that the former wife told the appellant on multiple occasions that her boyfriend beat her and that she had him arrested in Florida for beating her. *Id.* at ¶ 14.

{¶46} The Fourth District analyzed the issue and found the trial court did not abuse its discretion to deny the admission of the evidence:

In *Cooperider, supra*, [3rd Dist. Marion No. 9-03-11, 2003-Ohio-5113] the appellate court found that the victim's past violent acts occurring four years before the incident in issue in Cooperider's case were too distant in time and unrelated, and as such, they were properly excluded. In *State v. Ryan*, 2018-Ohio-2600, 115 N.E.3d 659 (11th Dist.), the appellate court found that the defendant's proffer lacked specificity, failed to detail the dates of the alleged prior violent acts, and failed to provide the number of prior violent acts. The *Ryan* court observed: "Absent a more detailed proffer, we are unable to determine whether these additional prior acts of violence by [the victim] were relevant in assessing appellant's state of mind and whether they were sufficient to support a finding that he had a bona fide belief that he was in imminent danger of death or serious bodily harm at the time of the shooting." *Id.*, at ¶ 106.

Based upon our review of the above law and the trial transcript, we find the trial court did not abuse its discretion in excluding evidence of [the boyfriend's] alleged prior violent conduct towards [the former wife]. First, other than Appellant's self-serving claim, the record does not reveal that

Appellant actually knew of [the boyfriend's] alleged prior violent conduct towards [the former wife] prior to the June 20, 2019 incident at [the former wife's] farm. Second, Appellant's claim that [the former wife] had "told him on multiple occasions that [the boyfriend] had beat the hell out of her and that she had him arrested in Florida," is somewhat vague and, without more, fails to demonstrate facts temporally and circumstantially related to the June 20, 2019 incident. [The former wife] and [the boyfriend] both testified they had been in a relationship together since 2015. If the proffered evidence was true, the record does not reflect if the alleged incidents occurred remotely in time or very close to the June 2019 incident. And, the alleged prior conduct of [the boyfriend's], as the prosecutor pointed out, was directed to [the former wife], not Appellant.

*Id.* at ¶ 21-22.

{¶47} We find the analysis of *Behrle* to be applicable to the present case. We do not have a proffer of evidence such as that in the *Behrle* case. From the State's motion in limine, it appeared that Ellis was attempting to introduce the Behavioral Detail Reports and/or O.M.'s prior fights in school. As in *Behrle*, the record does not reveal that Ellis actually knew of O.M.'s alleged prior violent conduct at school prior to the August 18, 2022 incident. There was no demonstration of facts temporally and circumstantially related to the August 18, 2022 incident. The record does not reflect that the alleged prior incidents occurred remotely in time or very close to the August 18, 2022 incident. Finally, O.M.'s alleged prior violent conduct occurred at school; it was not directed at Ellis.

{¶48} Assuming arguendo that the trial court erred in excluding the evidence, we find such exclusion to be harmless under Civ.R. 52(A). In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." An error is harmless where there is no reasonable probability that the error contributed to the outcome of the trial. *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, 2021 WL 1550501, ¶ 23 citing *State v. Thacker*, 4th Dist. Lawrence No. 18CA21, 2020-Ohio-4620, at ¶ 95, citing *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-61.

{¶49} A review of the record shows that during her cross examination, O.M. testified that she had been in a physical fight during her freshman year of high school. On August 18, 2022, O.M. was 16 years old. Evidence was admitted that O.M. had been in a physical fight during high school going to the issue of whether Ellis had reasonable grounds to believe that he was in imminent danger of bodily harm.

{¶50} For the foregoing reasons, we find the trial court did not err by excluding evidence of O.M.'s alleged prior violent conduct at school. The second Assignment of Error is overruled.

### III.

{¶51} In his third Assignment of Error, Ellis contends the jury's verdict was against the sufficiency and manifest weight of the evidence. We disagree.

{¶52} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶53} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶54} Ellis was found guilty of domestic violence. The offense of domestic violence is codified at R.C. 2919.25(A) and provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Ellis concedes in his appellate brief that it is uncontroverted that he knowingly caused physical harm to a family or household member. Ellis contends the jury's finding that he did not act in self-defense was against the sufficiency and manifest weight of the evidence.

{¶55} R.C. 2901.05(B)(1), states as follows:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶56} "Under the current version of R.C. 2901.05, if evidence is presented 'that tends to support' that the defendant used the force in self-defense, the *prosecution* must prove beyond a reasonable doubt that the accused did not act in self-defense." (Emphasis sic.) *State v. Sorrell*, 3rd Dist. Seneca No. 13-22-11, 2023-Ohio-2101, 2023 WL 4175260, ¶¶ 9-10 quoting *State v. Flory*, 3rd Dist. Van Wert No. 15-20-02, 2020-Ohio-5136, ¶ 43. Because of the cumulative nature of the elements of self-defense, "the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial." *State v. Gardner*, 8th Dist. Cuyahoga No. 110606, 2022-Ohio-381, 2022 WL 405318, ¶ 24 quoting *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13. S*ee also State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46 (8th Dist.); State v. Smith, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49; *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (11th Dist.); *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31; and *State v. Nestingen*, 5th Dist. Richland No. 2019 CA 110, 2020-Ohio-2965, ¶ 17.

{¶57} Deputy Johnson was the first to arrive on the scene. He observed Ellis's injuries, who claimed he had been stabbed with a knife. EMS advised Deputy Johnson that Ellis's injuries were consistent with fingernail scratches, not a knife. Based on Deputy Johnson's training and experience, he believed Ellis's wounds to be caused by O.M. in her self-defense. Ellis told Deputy Johnson that O.M. jumped off the kitchen table and attacked him. Deputy Johnson examined and photographed the kitchen table, and the photo was shown to the jury. He testified, "At the time of the photograph, I did see all the chairs standing upright. I did see the – table as in the – the photograph which is, in my eyes, inconsistent with somebody jumping off the table and trying to attack another person." (T. 62). Deputy Johnson received two versions of the incident from Ellis and O.M. Based on the scene and the injuries, Deputy Johnson testified that he found Ellis's version inconsistent and O.M.'s version consistent. (T. 77).

{¶58} O.M. testified that she started a verbal argument with Ellis after he called her mother a "bitch." (T. 91). She testified that after the verbal argument,

A. I just like started – (INAUDIBLE) – like we're not doing this and I just seen – (INAUDIBLE) – and I flew in to the TV. * * * I was in the corner literally doing this, because I had nowhere to move to.

Q. Okay. And who was attacking you?

A. Roy.

Q. Okay. And did you fight back?

A. I couldn't.

* * *

Q. Okay. How did you fight back?

A. Well, I tried to claw him off of me multiple times. But he's like – he has a physical advantage over me so I couldn't really do anything.

Q. What do you mean by physical advantage?

A. Like he's like strong muscle wise.

(T. 91, 93).

{¶59} V.D. testified that she called the police after she heard O.M. screaming "get off me, get off me, quit hitting me, quit hitting me." (T. 82).

{¶60} The jury found O.M.'s version of events to be credible that Ellis was not acting in self-defense when he caused her physical harm. Ellis presented no evidence that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force. Ellis claimed that O.M. jumped off the kitchen table and attacked him but the photographic evidence showed the chairs around the kitchen table were undisturbed. There was no evidence that O.M. used any weapon against Ellis other than her fingernails, as determined by the EMS. Based on his training and experience, Deputy Johnson testified Ellis's wounds were from O.M. in her self-defense.

{¶61} "Self-defense claims are generally an issue of credibility." *State v. Gardner*, 8th Dist. Cuyahoga No. 110606, 2022-Ohio-381, 2022 WL 405318, ¶ 2 quoting *Walker*, 2021-Ohio-2037 at ¶ 13. "Whether the state disproves any of the elements of self-defense is left to the trier of fact to decide." *Id.* quoting *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 36 (8th Dist.), citing *State v. Morton*, 147 Ohio App.3d 43, 2002-Ohio-813, 768 N.E.2d 730, ¶ 52 (8th Dist.). Having carefully reviewed the entirety of the evidence presented at trial, we cannot say the trier of fact lost its way or created a manifest

miscarriage of justice in finding Ellis guilty of domestic violence despite his claim of self-defense.

{¶62} The third Assignment of Error is overruled.

## CONCLUSION

{¶63} The judgment of the Morgan County Court is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.